```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -X
                                                    06 Civ. 2880 (WCC)
FILIPPO ALAMIA and ANGELA ALAMIA,       :
                                                        ECF CASE
                    Plaintiffs,         :

        - against -                     :           OPINION
                                                    AND ORDER
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,:

                    Defendant.          :
- - - - - - - - - - - - - - - - - - - - -X
```

**A P P E A R A N C E S :**

        LAW OFFICE OF JAMES P. HARRIS
        **Attorneys for Plaintiffs**
        305 Main Street, 2nd Floor
        Goshen, New York 10924

JAMES P. HARRIS, ESQ.
      Of Counsel

        MURA & STORM, PLLC
        **Attorneys for Defendant**
        930 Rand Building
        14 Lafayette Square
        Buffalo, New York 14203

SCOTT D. STORM, ESQ.
      Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiffs Filippo and Angela Alamia bring this action against Nationwide Mutual Fire Insurance Company ("Nationwide") for breach of contract alleging that Nationwide improperly denied them insurance coverage for damage to their residence in violation of their Nationwide Homeowners Elite Policy (the "Policy").  Nationwide claims that the Policy was not in effect at the time of the loss, and, even if it were, the damage was caused by "earth movement," which the Policy expressly excludes from coverage.  Nationwide now moves for summary judgment on plaintiffs' claim pursuant to FED. R. CIV. P. 56.  For the foregoing reasons, Nationwide's motion is granted.

## BACKGROUND

When viewed in the light most favorable to plaintiffs,[1] the record reveals the following relevant facts.  Filippo and Angela Alamia are married and reside in a single-family home located on 12 Capital Drive, Washingtonville, New York.  (*See* F. Alamia Aff. ¶ 2.)  On or about December 21, 2004, plaintiffs purchased an insurance policy from Nationwide that they were told "would cover all property damage [to their residence] except [for] natural disasters."  (*See id.* ¶ 3.)  The Policy took effect on February 8, 2005 and expired on February 8, 2006.  (*See id.*)

On or before October 5, 2005, an iron sewage pipe under the foundation of plaintiffs'

---

[1] *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007) ("'In assessing the record to determine whether there is [a genuine issue of material fact], the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'") (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)); *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486 (2d Cir. 2006) ("We [must] . . . constru[e] the facts in the light most favorable to the non-moving party[] . . . ."); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, No. 03 Civ. 1895, 2007 WL 39301, at *5 (S.D.N.Y. Jan. 8, 2007) ("In determining whether a genuine issue of material fact exists, the Court must examine all evidence in the light most favorable to the nonmoving party.").

residence broke and leaked water, causing substantial damage to the bathroom, hallway, bedroom, kitchen and garage area. (*See id.* ¶ 4; Anton Aff., Exs. N, R.)  Visual inspection revealed "cracks in the sheetrock, moldings, door jams and cabinetry." (*See* Anton Aff., Ex. N.)  Plaintiffs retained Carlos Rosaly, a plumber employed by "Rooter-Man," who on October 6, 2005 inspected the damage and determined that the pipe was broken when it was initially installed and had been leaking under the foundation for years. (*See* Anton Aff., Ex. M.)  Rosaly replaced the broken portion of the pipe, but did not repair any of the damage. (*See id.*)

The next day plaintiffs filed an insurance claim with Nationwide.  (*See* F. Alamia Aff. ¶ 7; Anton Aff., Ex. A.)  Nationwide assigned Marianne Anton as the property claims adjuster, and that same day she conducted an inspection of plaintiffs' residence. (*See* Anton Aff. ¶ 4.)  According to Anton, "[i]mmediately noticeable upon walking into the residence [was] a 4-6" grade differential from the front to the back of the house." (*See id.* ¶ 6.)  Further inspection revealed a 18' by 15' by 2' cavity in the earth under the foundation and that the foundation had been cracked and patched on repeated occasions.  (*See id.* ¶¶ 5, 6.)  In addition, the interior walls showed signs of movement, including large cracks, and it appeared that moldings had been altered to account for the shifting, doors were cut to allow them to swing freely and sub-flooring was installed to raise the level of the house.  (*See id.* ¶ 6, Exs. D, R.)  Anton concluded that the damage was caused by the gradual settlement of the house's concrete foundation. (*See* Anton Aff. ¶ 7.)  Accordingly, on October 7, 2005, Nationwide issued a reservation of rights letter to plaintiffs indicating that the damage may not be covered pursuant to the Policy's "earth movement" exclusion, which provides:

> (1)   We do not cover loss to any property resulting directly or indirectly from any of the following.  Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

      a)      Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking. . . .

(*See* Anton Aff. ¶ 4, Exs. C, B (the Policy, Property Exclusions, D1(1)(a)).)

Nationwide retained John P. Flynn of LGI Forensic Group Engineers and Consultants as its engineer expert to inspect plaintiffs' residence in order to verify Anton's initial determination. (*See* Anton Aff. ¶ 7; Flynn Aff. ¶ 1.) Flynn conducted an inspection of plaintiffs' home on October 17, 2005 and concluded that the damage was caused by the downward movement of the house's foundation, which was not associated with the leak in the pipe, but rather, "soil that is prone to settlement and that [was] inadequately compacted at the time of [the] construction of the house." (*See* Flynn Aff. ¶ 3.) He opined that the settlement of the foundation caused the break in the pipe, and not vice versa. (*See id.*) Based upon Anton's initial determination and Flynn's assessment, Nationwide sent plaintiffs a denial of coverage letter on October 18, 2005, indicating that the damage was caused by "earth movement" and, as such, was excluded from coverage under the Policy. (*See* Anton Aff. ¶ 10, Ex. E.) Specifically, the letter stated:

> We regret to inform you that the loss (or a part thereof) is not covered because:
>
> The damages are the result of earth movement, settlement and the deterioration of the concrete slab foundation. The failure of the waste line is a direct result of the movement of the floor slab and soil. The soil movement is not associated with the leak in a wasteline, but rather the wasteline failure is a result of the soil movement. The slab was reinforced with rebar, which was noted to have rusted and failed in several areas. The slab has been failing gradually over time as evidenced[] by many cosmetic trim components in the home that had been modified to account for the downward movement. As such loss is excluded, we must respectfully decline this claim for payment.
>
> We refer to the policy under Section I Policy Exclusions on page D1 [regarding earth

3

movement] . . . .

(*See id.*, Ex. E.)

On October 18, 2005, plaintiffs retained Alfred A. Fusco, Jr. from Fusco Engineering & Land Surveying, PC, to inspect the damage and evaluate Nationwide's findings. (*See* F. Alamia Aff. ¶ 8; Fusco Aff. ¶ 1.) That same day Fusco conducted his inspection and concluded that

> the broken sewer line, over a period of time, caused erosion and settlement of the earth under the slab. This caused settlement of the slab. This settlement caused damage to the bathroom area, hall area, bedroom, kitchen and garage area.

(*See* Anton Aff., Ex. N.) Fusco opined "with a reasonable degree of engineering certainty, that the sewer pipe leaching caused the erosion [and] settlement which caused the damage." (*See* Fusco Aff. ¶ 5.)

Plaintiffs received an estimate from Songer Contracting of $118,700 for the total cost of repairs and allege that they are entitled to $121,225 under the Policy, representing the estimated cost of repairs plus the cost of the plumbing services. (*See* Complt. ¶¶ 8-10.) Defendant argues that whatever the cause of the settlement, the Policy unambiguously precludes coverage for damages caused by "earth movement," which, according to both plaintiffs' and defendant's version of events, is precisely what caused the damage to plaintiffs' residence. We agree with defendant.

## DISCUSSION

**I.  Legal Standard**

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The court's role at this stage

of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and in deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255. Nevertheless, to defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II.     The Policy Unambiguously Excludes Coverage for the Damage to Plaintiffs' Residence

Defendant claims that the "earth movement" exclusion precludes coverage for the damage to plaintiffs' residence. Plaintiffs' expert opined that the broken pipe had been leaking water into the soil below the structure of the house for several years, causing the earth to settle and erode. This settlement, their expert contends, created a cavity into which the concrete foundation gradually settled, ultimately causing the damage at issue. Defendant's version of events differs only in that it claims that the settlement of the house's foundation caused the pipe to break, instead of vice versa, and that the settlement was caused by soil that is prone to settlement and was inadequately compacted at the time of construction.

Assuming, *arguendo*, that the Policy was in effect at the time of the damage, as plaintiffs contend, the sole issue is whether the Policy's "earth movement" exclusion precludes coverage for the damage to plaintiffs' house. Accepting plaintiffs' version of the facts as true, our analysis entails two steps: first, we must determine whether the settlement or erosion of the soil, as described by

plaintiffs' expert, constitutes "earth movement" as defined in the Policy, and if so, whether the Policy precludes coverage even when the "earth movement" itself was caused by water leaking from a broken pipe. We answer both questions in the affirmative.

"New York insurance law provides that an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (internal quotation marks omitted). "When the provisions are unambiguous and understandable, courts are to enforce them as written." *Id.* (citing *Goldberger v. Paul Revere Life Ins. Co.*, 165 F.3d 180, 182 (2d Cir. 1999)). "Whether a contract is ambiguous, however, is a 'threshold question of law to be determined by the court.'" *Id.* (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005)). "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (quoting *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (internal quotation marks omitted)). In deciding whether an ambiguity exists, an insurance policy must "'be read in light of common speech and the reasonable expectations of a businessperson.'" *Id.* (quoting *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 13 A.D.3d 599, 788 N.Y.S.2d 142, 144 (2d Dep't 2004)). "Moreover, to negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." *Id.* (quoting *Throgs Neck Bagels, Inc. v. GA Ins.*

*Co. of NY*, 241 A.D.2d 66, 71, 671 N.Y.S.2d 66, 69 (1st Dep't 1988)) (alterations in original; internal quotation marks omitted); *see also 242-44 E. 77th St., LLC v. Greater N.Y. Mut. Ins. Co.*, 31 A.D.3d 100, 105, 815 N.Y.S.2d 507 (1st Dep't 2006) ("'[P]olicy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer.'") (quoting *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383, 795 N.E.2d 15, 763 N.Y.S.2d 790 (2003)).

As noted, in the present case, the "earth movement" exclusion provides:

(1)   We do not cover loss to any property resulting *directly or indirectly* from any of the following. *Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss*.
        a)   Earth Movement and Volcanic Eruption. Earth movement means: *earth movement due to natural or unnatural causes*, including mine subsidence; earthquake; landslide; mudslide; *earth shifting*, rising *or sinking*. . . .

(*See* Anton Aff., Ex. B (the Policy, Property Exclusions, D1(1)(a) (emphasis added)).) It is beyond doubt that the "earth movement" exclusion clearly and unambiguously applies to the damage to plaintiffs' residence.

Plaintiffs' own expert specifically averred that the damage was caused by the settlement of the house's foundation, which was in turn caused by "erosion and settlement of the earth under the slab." (*See* Fusco Aff. ¶ 3; Anton Aff., Ex. N.) "Erosion" is defined as the process of "wear[ing] away [of earth] by the action of water . . . ." *See* http://www.m-w.com/dictionary/erode. "Settlement" is defined as the process of "caus[ing] to pack down . . . ." http://www.m-w.com/dictionary/settling. Under the present circumstances, either action indisputably involves the "movement," or more precisely, the "shifting" or "sinking" of the earth.

Unsurprisingly, when faced with similar insurance policies, New York courts have

7

consistently held such damages to be non-compensable. *See Sheehan v. State Farm Fire & Cas. Co.*, 239 A.D.2d 486, 487, 658 N.Y.S.2d 61 (2d Dep't 1997) (no coverage under a substantially similar earth movement exclusion for damage to the plaintiffs' house caused by the sinking of its concrete slab foundation as a result of decomposing organic matter); *Kula v. State Farm & Cas. Co.*, 212 A.D.2d 16, 21, 628 N.Y.S.2d 988 (4th Dep't 1995) (no coverage under a substantially similar earth movement exclusion for damage caused by the sinking of the plaintiffs' house as a result of ground saturation from a ruptured underground water pipe); *Nowacki v. United Servs. Auto. Ass'n Prop. & Cas. Ins. Co.*, 186 A.D.2d 1038, 1038, 588 N.Y.S.2d 224, 225 (4th Dep't 1992) (no coverage under a substantially similar earth movement exclusion for extensive damage to the plaintiffs' house, including the collapse of a stairway, as a result of erosion). Plainly, any other interpretation of this clause would render it meaningless. *See Moshiko, Inc. v. Seiger & Smith, Inc.*, 137 A.D.2d 170, 175, 529 N.Y.S.2d 284 (1st Dep't 1988), *aff'd*, 72 N.Y.2d 945, 529 N.E.2d 420, 533 N.Y.S.2d 52 (1988) ("A court may neither make nor vary an insurance contract by extending coverage beyond the fair intent and meaning of the agreement, and the liability of the insurer cannot be enlarged by implication beyond the express terms of the contract.").

The next issue is whether the exclusion applies to the damage even though, as plaintiffs' expert maintains, the "earth movement" was caused by water leaking from a broken pipe. The only reasonable reading of the Policy leads us to conclude that it does. The "earth movement" clause is preceded by what is commonly referred to as an "anti-concurrent" clause, which excludes coverage for damage caused by an excluded peril even when covered perils also contribute to the damage. *See ABI Asset Corp. v. Twin City Fire Ins. Co.*, No. 96 CIV. 2067, 1997 WL 724568, at *2 (S.D.N.Y. Nov. 18, 1997) ("New York courts have interpreted similar clauses to mean that where a loss results

from multiple contributing causes, coverage is excluded if the insurer can demonstrate that *any* of the concurrent or contributing causes of loss are excluded by the policy.") (emphasis in original); *Kula*, 212 A.D.2d at 21 (by virtue of an anti-concurrent provision, no coverage for damages resulting from earth movement even though the movement was caused by a covered peril). Accordingly, because "earth movement" was at least a contributing cause of the damage (and clearly a major one), plaintiffs are not entitled to coverage under the Policy.

Notably, plaintiffs allege in their Complaint that defendant untimely denied their claim and that they are therefore entitled to coverage under the Policy. (*See* Complt. ¶ 16.) They have abandoned this claim, however, by failing to respond to defendant's argument on this issue. *See Herrmann v. Moore*, 576 F.2d 453, 455 (2d Cir.), *cert. denied*, 439 U.S. 1003 (1978); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y.), *aff'd*, 130 F.3d 1101 (2d Cir. 1997). Nonetheless, plaintiffs' argument is devoid of any merit, as we cannot imagine a more prompt and diligent response by defendant.

"While the insurer may waive the right to disclaim based on the insured's noncompliance with a condition precedent, its right to disclaim coverage based on a policy exclusion can be defeated only by estoppel." *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 323, 662 N.E.2d 763, 772, 639 N.Y.S.2d 283, 292 (1995) (quoting *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 699, 417 N.E.2d 84, 435 N.Y.S.2d 972 (1980)). Clearly, Nationwide did nothing to lead plaintiffs to believe that it was providing coverage for the loss. *See id.* As noted, plaintiffs filed a claim with Nationwide on October 6, 2005, and *that same day* defendant conducted an inspection of plaintiffs' residence and, on the very next day, issued a reservation of rights letter to plaintiffs indicating that the damage may be excluded from coverage under, *inter alia*, the Policy's "earth movement"

provision. Nationwide then conducted its final inspection on October 17, 2005 and sent plaintiffs a denial of coverage letter on October 18, 2005, citing the Policy's "earth movement" exclusion. Thus, the entire review process took only twelve days – a surprisingly short amount of time – and defendant never indicated that it would provide coverage. Under these circumstances, defendant cannot be estopped from relying upon the Policy's clear and unambiguous "earth movement" exclusion.

### III.    Nationwide's Counterclaim

Nationwide counterclaims for $1,087.50 for expenses incurred in its investigation of the claim. It alleged:

> By virtue of the fact that there is no coverage for the incident claimed by the plaintiff due to one or more of the affirmative defenses asserted by Nationwide, it is entitled to a judgment against the plaintiff and recovery in an amount in excess of $1,087.50, together with interest, costs, disbursements and attorneys' fees, as well as any other relief to which this Court may seem just, proper and equitable.

(*See* Ans. and Counterclaim ¶ 29.) However, defendant fails to cite a provision of the Policy that entitles it to reimbursement of costs incurred in investigating a claim that is ultimately denied. *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003). Moreover, defendant fails to move for judgment on the counterclaim and makes no mention of it at all in its motion papers. *See, e.g.*, *Anti-Monopoly*, 958 F. Supp. at 907 n.11. Accordingly, Nationwide's Counterclaim must be dismissed.

### CONCLUSION

For the foregoing reasons, the motion for summary judgment filed pursuant to FED. R. CIV.

P. 56 by defendant Nationwide Mutual Fire Insurance Company ("Nationwide") is granted. Furthermore, Nationwide's Counterclaim is dismissed. The Clerk's Office is directed to enter judgment in favor of Nationwide, dismissing the entire action, with prejudice and without costs or attorneys' fees.

SO ORDERED.
Dated: White Plains, New York
       July 11, 2007

                                                                                                                              _William C. Conner_
                                                                                                                           Sr. United States District Judge